172 So.2d 824 (1965)
Vesta HEDGES, Petitioner,
v.
STATE of Florida, Respondent.
No. 33567.
Supreme Court of Florida.
March 17, 1965.
*825 Mark R. Hawes, St. Petersburg, and Richard B. Keating, Orlando, for petitioner.
Earl Faircloth, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
By a petition for a writ of certiorari we have for review a decision of a District Court of Appeal which allegedly conflicts with prior decisions of this Court and another District Court of Appeal.
We must decide whether a charge defing degrees of homicide, including manslaughter, should likewise include a definition of excusable and justifiable homicide.
The facts are revealed by the opinion of the District Court of Appeal. Hedges v. State, 165 So.2d 213. The petitioner Hedges was indicted for the first degree murder of her paramour. She was convicted of manslaughter. The trial judge initially instructed the jury on all degrees of unlawful homicide. He also instructed on justifiable and excusable homicide. After deliberating some six hours and recessing for the night a juror advised the court:
"We would like for you to go over the different degrees that were stated the other day. There is some confusion as to the different charges there."
In response to the juror's request, the judge repeated his charge on the degrees of unlawful homicide. However, he denied a request of petitioner's attorney to include his charge on justifiable and excusable homicide. The judge had the view that since the jury requested only the charges on degrees of homicide, he had no obligation to repeat his charge on justifiable and excusable homicide. Petitioner's attorney pointed out that the statute which defines manslaughter specifically excludes justifiable and excusable homicide. He contended that it would be impossible to define manslaughter accurately without reference to the other two types of homicide. The District Court affirmed the ruling of the trial judge. Its decision is now here for review.
Petitioner claims that the decision below conflicts with the prior decision of this Court in Tipton v. State, 97 So.2d 277, and, the decision of the Court of Appeal, First District, in Bagley v. State, 119 So.2d 400.
In Tipton we held that the manslaughter statute, Section 782.07, Florida Statutes, F.S.A., necessarily requires a definition of excusable homicide as an essential of a complete charge. In Bagley the First District held that an instruction should be complete. It should cover every essential element of the offense charged. There the information charged second degree murder but in his instructions the trial judge omitted a part of the statutory definition of justifiable homicide. This resulted in a reversal.
In the instant case the trial judge deemed it unnecessary to define justifiable and excusable homicide in order to inform the jury correctly on the several degrees of unlawful homicide, including manslaughter.
An examination of the cases cited, as well as others which we shall mention, leads us to a jurisdictional conflict of decisions and hence a consideration of the merits.
*826 Section 782.07, Florida Statutes, F.S.A., defines Manslaughter as follows:
"The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder * * * shall be deemed manslaughter * * *."
One notes immediately that it is in the nature of a residual offense. If a homicide is either justifiable or excusable it cannot be manslaughter. Consequently, in any given situation, if an act results in a homicide that is either justifiable or excusable as defined by statute, a not guilty verdict necessarily ensues. The result is that in order to supply a complete definition of manslaughter as a degree of unlawful homicide it is necessary to include also a definition of the exclusions. A definition of the higher degrees of homicide  as one of the manslaughter exclusions  would be necessary only if a higher degree is charged, as was the case here.
We have already mentioned Tipton v. State, supra, and Bagley v. State, supra. There are other decisions which underscore the presence of jurisdictional conflict and support the conclusion which we here reach.
It will be recalled that the instant problem arose when the trial judge repeated  at jury request  his instructions on degrees of homicide. It is proper for a judge to limit the repetition to the charges requested. Hysler v. State, 85 Fla. 153, 95 So. 573. However, the repeated charges should be complete on the subject involved. The giving of a partial instruction fails to inform the jury fully and often leads to undue emphasis on the part given as against the part omitted. McCray v. State, 89 Fla. 65, 102 So. 831. The McCray decision is particularly persuasive. There the judge repeated certain charges on the degrees of homicide and failed to add that, if the evidence warranted, the defendant could be convicted of any of the degrees "or be acquitted". The failure to add the possibility of acquittal was held error.
In Graives v. State, 127 Fla. 182, 172 So. 716, a manslaughter case, we held that it is the duty of the judge to instruct on justifiable and excusable homicide. In Halfrich v. State, 122 Fla. 375, 165 So. 285, we held that it is always proper to instruct on justifiable and excusable homicide when defining manslaughter as a degree of unlawful homicide. The reason given was to enable the jury to understand the definition of manslaughter.
In the instant case when the judge repeated his charges on degrees of homicide he should have included the requested definitions of justifiable and excusable homicide. Failure to do so erroneously left with the jury an incomplete, and, potentially misleading instruction. Bagley v. State, supra; McCray v. State, supra.
Having taken jurisdiction we should dispose of another point raised by the petitioner. It is contended that when instructing on the law of self-defense, the judge should have informed the jury that if attacked in her own home the accused is not obliged to retreat in order to avoid the difficulty. The state replies that the "home rule exception" to the requirement of retreat is not available when, as here, the attacker does not enter as a trespasser. Moreover, contends the state, there was no need for an instruction on retreat because the evidence showed no duty of the accused to retreat.
We think the last contention of the state would be sound here but for the actual instruction on self-defense given by the judge. As we read it from the state's brief it contained the following:
"In order to justify the taking of human life, the accused must have used all reasonable means within his power and consistent with his own safety to avoid the danger and avert the necessity of taking human life."
The instruction correctly stated the law as far as it went but again it was *827 not complete. The quoted language placed upon the accused the duty to use all reasonable means consistent with her own safety to avoid the danger and avert the necessity of taking human life. To the lay mind this well could be construed to mean the duty to run or to get out of the way. There is no such duty when one is assaulted in his own home, despite the common law duty to "retreat to the wall" when one is attacked elsewhere. Pell v. State, 97 Fla. 650, 122 So. 110. While Pell involved a trespasser, it clearly states the rule to be that when one is violently assaulted in his own house or immediately surrounding premises, he is not obliged to retreat but may stand his ground and use such force as prudence and caution would dictate as necessary to avoid death or great bodily harm. When in his home he has "retreated to the wall". Pell further decides that such an instruction should be an element of the charge on self-defense where the evidence supports it. Other courts have held that a man is under no duty to retreat when attacked in his own home. His home is his ultimate sanctuary. Wharton's Criminal Law and Procedure (Anderson), Vol. 1 p. 519; People v. Newcomer, 118 Cal. 263, 50 P. 405, State v. Grantham, 224 S.C. 41, 77 S.E.2d 291, State v. Bissonnette, 83 Conn. 261, 76 A. 288. In view of the charge actually given, we find that the rule of non-necessity of retreat in one's own home should have been included.
The petitioner will be entitled to a new trial.
The decision under review is quashed and the cause is remanded to the Court of Appeal, Second District, for disposition consistent herewith.
It is so ordered.
DREW, C.J., and THOMAS, ROBERTS and O'CONNELL, JJ., concur.