PER CURIAM.
Appellant was charged with, and convicted of, three counts of sexual battery. He appeals and we reverse.
The charges arose out of events which occurred in defendant’s apartment[1] during the early morning hours of April 7, 1998. The prosécuting witness, referred to here as “J”, testified that she began dating appellant in February of 1998 after which she would stay at the apartmént several times a week, sleeping with defendant. She testified that on the night in question she and defendant went to bed at around 2:00 a.m., that she was awakened at about 4:00 a.m. when defendant began to remove her clothes. She stated that she told defendant to stop but he refused and that despite her screams he then committed the subject acts of sexual battery over the course of several hours, using force or threat of force to do so.
“J” further testified that she left the apartment at about 9:00. a.m. when appellant fell asleep, and telephoned her mother, asking to be taken home. She then called police and reported first a battery, and then a sexual battery. The investigating officer testified that he saw what appeared to be bruising on “J’s” face and arm. Defendant’s sister and her then boyfriend- both testified that defendant and “J” had frequently engaged in rough horseplay, and both testified that on the night in question neither had heard any screams emanating from defendant’s bedroom, although the apartment was small and noises could be easily heard.
At the heart of this appeal is the question of the admissibility of two documents over the strong objection of defendant as to relevancy. The trial court allowed the documents into evidence after commenting that they were the worst prejudicial items of evidence the court had ever seen.
At trial the state called a transportation officer from the Sheriffs Office to testify. The officer testified that he took a legal pad from the defendant when he transported the defendant to his bond hearing. The pad contained two documents which appeared to be in the defendant’s handwriting, a journal.entry and a letter dated May 19 which starts “Dear ‘J’.”
Prior to trial the defendant filed a motion in limine to suppress the writings on the basis that they were not relevant to any material issue in the case. The trial court reserved ruling and at trial the parties presented arguments on the issue. The defendant in essence argued that the documents were not probative to the controlling issue of consent and should be suppressed because they were unfairly prejudicial and did not constitute an admission. The state argued the letter was admissible as evidence of a threat to the victim and the journal entry was an admission which corroborates the victim’s testi *225 mony. The trial court ruled that the journal entry was relevant and material. The trial court also allowed the letter into evidence in a redacted form as a reference to death threats to the victim.
The journal entry allegedly written by defendant was allowed into evidence as an admission against interest. Even assuming, without deciding, that it was admissible because of the way it came into the state’s possession, although it reflects on the incident in question and doubts “J’s” virginity, there is no admission of guilt therein. Its prejudicial nature far outweighs any probative value it might have.
The “letter” was also found in defendant’s pad which was taken from him by the transportation officer. The letter began “Dear ‘J’ ” and was dated 5/19. The letter was not sent to the victim. The defendant suggests that the letter was never going to be sent and represents the venting of a frustrated defendant. The state contends the letter was intercepted before being sent to the victim and represents a threat to the victim. The original letter contains many graphic sexual references to the victim. The defendant engages in a fantasy of the defendant and victim being married and the defendant engaging in a incestuous relationship with the couple’s non-existent daughter sometime in the future. The redacted letter admitted into evidence excluded this most prejudicial information. However, the portions of the redacted letter which were admitted still contain graphic sexual statements of what the defendant would do with the victim if he visited her in prison. (The defendant somehow imagined the victim would end up in prison). The defendant then explains in detail how he is going to slowly kill the victim when she is released from prison. The trial court admitted this evidence as relevant to the issue of the consciousness of guilt by the defendant’s desire to evade prosecution by attempting to intimidate the victim under the ruling in Sireci v. State, 399 So.2d 964 (Fla.1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). In Sired the court allowed in testimony of a cellmate of the defendant. The cellmate testified that the defendant told him that he attempted to have his brother-in-law killed. The brother-in-law testified that the defendant made statements which fully implicated the defendant in the crime. The defendant told the cellmate that the purpose of killing his brother-in-law was to discredit another witness and therefore avoid a conviction. The court held this evidence admissible:
Evidence that a suspected person in any manner endeavors to evade a threatened prosecution by any ex post facto indication of a desire to evade prosecution is admissible against the accused where the relevance of such evidence is based on consciousness of guilt inferred irom such actions, (citations omitted). A defendant’s attempt to intimidate a state witness is relevant and admissible, (citations omitted).
399 So.2d at 968. The theory in Sired on the admissibility of evidence of an attempt to evade prosecution or prevent a witness from testifying is analogous to evidence of flight. Proof of a defendant’s acts related to the offense charged is admissible to prove a defendant’s acknowledgment of guilt. See Anderson v. State, 574 So.2d 87, fn. 4 (Fla.1991), cert. denied, 502 U.S. 834, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991).
Two factors would appear to disqualify the “letter” in this case under the Sired analysis. A review of the letter does not indicate a consciousness of guilt as did the evidence in Sired. While in Sired the defendant talked of killing his brother-in-law to avoid a conviction, there is no such indication in the “letter” that the defendant is attempting to keep the victim from testifying. The threats to the victim, if any, are for in the future when by some warped perception of the defendant the victim is released from jail. There simply is no nexus between these flights of fancy and any desire to evade prosecution by threatening the victim. It is this very *226 nexus which provides the inference of a consciousness of guilt. It is this inference which allows admission of such evidence. In addition, although addressed to the victim there is no evidence that the letter was ever to be mailed to the victim. This “letter” is just as likely the venting of a frustrated defendant. Granted the letter is probative of the defendant’s current dislike of the victim, nevertheless, the letter is highly prejudicial without an attendant indication of an acknowledgment of guilt. Defendant is entitled to a new trial.
REVERSED.
COBB, HARRIS, JJ., and ORFINGER, M., Senior Judge, concur.

. Defendant shared the apartment with his sister, her live-in-boyfriend and her 9-year-old daughter.